No. _____

---

In the United States Court for the Middle District of Louisiana

---

Tyrone Parker, Petitioner

v.

Jimmy LeBlanc, Secretary of the Department of Public Safety & Corrections

---

## Petition for a Writ of Habeas Corpus
## by a Person in State Custody

---

Thomas Frampton
UVA School of Law
580 Massie Road
Charlottesville, VA 22903
t: (202) 352-8341
e: tframpton@law.virginia.edu
*Affiliation for identification only*

# TABLE OF CONTENTS

INTRODUCTION...................................................................................3

SECTION ONE: PROCEDURAL HISTORY AND STATEMENT OF FACTS........4

    I      Summons for Simple Battery......................................................4

    II.    Jeopardy Attaches....................................................................4

    III.   The Prosecutor Changes Her Mind & Engages in *Ex Parte*
         Communications with Judge Sens...............................................5

    IV.   More *Ex Parte* Communications Between Prosecutors
         and Judge Sens.......................................................................7

    V.    Judge Sens Declares a Mistrial Over Mr. Parker's Objection &
         Prosecutors Dismiss the Charges................................................8

    VI.   Mr. Parker is Subject to Jeopardy A Second Time...........................10

    VII.  A Plea Agreement Preserves Mr. Parker's Right to Raise his
         Double Jeopardy Claim in Post-Conviction  Petitions......................11

    VIII. Mr. Parker Unsuccessfully Attempts to (Re)Raise the
         Double Jeopardy Issue in State Court.........................................12

SECTION TWO: DOUBLE JEOPARDY CLAIM..............................................13

    I.    Double Jeopardy, Law..............................................................13

        A.    Re-Prosecution Following Mistrial......................................14

        B.    Re-Prosecution Following Acquittal....................................17

        C.    The "Same Offense" ......................................................18

    II.    Double Jeopardy, Application of Law to Facts................................19

SECTION THREE: INEFFECTIVE ASSISTANCE OF COUNSEL.....................20

SECTION FOUR: MR. PARKER'S CLAIMS MUST BE
HEARD ON THE MERITS........................................................... 23

I.      Mr. Parker is "in Custody" ........................................................23

II.     This is Mr. Parker's First Application for a Writ of Habeas Corpus…23

III.    The Claim in this Application has been Exhausted (Twice)  ………… 24

IV.     The Claim in this Application is Timely Filed………………………… ..25

CONCLUSION AND PRAYER FOR RELIEF…………………………………………...26

## INTRODUCTION

Tyrone Parker, an indigent 61-year-old New Orleans resident, has spent the past three years fruitlessly urging Louisiana courts to recognize a basic feature of constitutional criminal procedure: that "battery" (for which he was placed in jeopardy once, and acquitted) and "second-degree battery" (for which he was placed in jeopardy a second time) are the same offense for purposes of the Fifth Amendment's Double Jeopardy Clause. At every level, without offering a word of explanation for their rulings, Louisiana courts have rejected Mr. Parker's pleas for relief. Now, having been convicted of a felony battery offense—and consequently deprived of liberty and franchise—he seeks relief from the federal courts. It is for unusual cases like Mr. Parker's, involving unreasoned state court rulings evincing disregard for basic rights under the U.S. Constitution, that careful scrutiny is most necessary.

## SECTION ONE: PROCEDURAL HISTORY AND STATEMENT OF FACTS

I.      **Summons for Simple Battery**

Tyrone Parker's ordeal began on February 1, 2017, when a New Orleans Police Officer handed him a ticket for an alleged a violation of New Orleans Municipal Code § 54-96 ("Battery").[1] The New Orleans Police Department item number for this municipal case is B-00908-17 and the alleged incident took place on February 1, 2017 on the 800 Block of St. Andrew's Street. *See* Ex. 1 (Municipal Court Affidavit / Charging Instrument). On February 10, 2017, Mr. Parker appeared in Division A of the New Orleans Municipal Court for arraignment in Municipal Case No. 1208168, where he pleaded "not guilty" to the charge of "battery" in violation of § 54-96. *See* Ex. 2 (Municipal Court Docket Master). He was released on his own recognizance and a judge trial was scheduled for April 4, 2017.

## II.    Jeopardy Attaches

On April 4, 2017, Mr. Parker appeared in Division A and a judge trial on the merits commenced before Judge Paul N. Sens. Prior to trial, Mr. Parker knowingly and intelligently waived his right to counsel. *See* Ex. 3 (April 25, 2017 Minute Entry); Ex. D (herein "Trial Tr.") (April 4, 2017) 42:18-44:19; Trial Tr. (April 25, 2017) 46:10-46:14. Prior to trial, both Judge Sens and the prosecutor ensured that the wavier of counsel was voluntary. *Id.*

---

[1] New Orleans Municipal Code, Section 54-96 provides: "(a) It shall be unlawful for any person to commit the crime of battery. (b) Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." The definition of "Battery" in Title 14 of the Louisiana Revised Statutes is identical. *See* La. R.S. 14:33.

4

The City, through Assistant City Attorney Jane Beebe, made an opening statement, Trial Tr. (April 4, 2017) 4:8-4:22, and called the prosecution's first and only witness, Elizabeth Blakely, *id.* at 4:23-5:2. The witness was duly sworn. *Id.* This witness testified on direct examination at length; was subject to cross-examination; and then subject to re-direct examination. *Id.* at 5:5- 41:2. The witness was released (*id.* at 41:4), and the City rested its case after Ms. Blakely's testimony. *Id.* at 39:6-39:8 ("BY MS. BEEBE: All right. Nothing further, Judge."); *id.* at 40:21-40:23 ("BY THE COURT: Have you [the City] rested? BY MS. BEEBE: Yes."); 41:10-41:17 ("BY MS. BEEBE: The City rests. BY THE COURT: The City rests in this matter, so now it's your [Mr. Parker's] case-in-chief.").

### III.    The Prosecutor Changes Her Mind Mid-Trial & Engages in *Ex Parte* Communications with Judge Sens

While Ms. Blakely was testifying—and, hence, after jeopardy attached—the prosecutor for the City concluded that she had made a mistake in placing Mr. Parker in jeopardy for a misdemeanor battery instead of a felony second-degree battery offense. (Specifically, at the time of the incident, the alleged victim declined to go to the hospital and officers noted no injuries; on direct examination, apparently for the first time, Ms. Blakely claimed that Mr. Parker "dislocated her jaw." Curiously, she was only given ibuprofen for this claimed injury. *See* Trial Tr. 9:23-10:2.) Immediately after the witness claimed to have sustained serious injuries, Ms. Beebe directly solicited Judge Sens' help in arranging a "do-over" for prosecutors:

5

MS. BEEBE:          Do you have any medical records with you?

MS. BLAKELY:      Do you want me to –

MS. BEEBE:          **Sounds like a second degree [battery], Judge. Is**

**there any way we can pause it and—**

(There was a brief bench conference.)

*Id.* 8:16-8:23 (emphasis added). The prosecutor then approached Judge Sens and

held an *ex parte* conversation with him. *See* Trial Tr. 8:24 ("There was a brief bench

conference."); *see also* Ex. 5, Affidavit of Tyrone Parker ("The prosecutor went up to

the judge and the two of them talked for about a minute. I was seated at the

defendant's table and could not hear what they were discussing. I was not invited to

join the conversation by the judge or the prosecutor and I did not know I had a right

to be part of it."). *But see* La. Code of Judicial Conduct § 3(6) (prohibiting such *ex*

*parte* conversations).

    Following this *ex parte* conference between Judge Sens and the prosecutor,

the Judge declared a mid-trial "continuance" for several weeks. Only the prosecutor

asked for this "pause"; at no time did Mr. Parker ask for such a break, despite what

the State would later represent in its filings.

    Prosecutors' aim was clear. On a subpoena handed to the complaining

witness after the misdemeanor trial court "adjourned" the trial, prosecutors ordered

the complaining witness to come back on April 25, 2017. But the same prosecutor

noted in writing on the same document: "D.A. SCREENING FOR REFERAL DUE

TO NATURE – GIVE INFO." *See* Ex. 12. Representatives of the Orleans Parish

District Attorney's office have apparently tried to conceal this fact: when undersigned counsel requested the D.A.'s file in a public records request, the handwritten note (indicating the ongoing effort to move the case mid-trial into felony court) was redacted by the Orleans Parish D.A.

### IV.    More *Ex Parte* Communications Between Prosecutors and the Judge

Prosecutors immediately began the process of instituting felony charges. Later that afternoon—i.e., after the City had already rested its case in *City of New Orleans v. Tyrone Parker* (Case No. 1208168)— additional *ex parte* communications concerning Mr. Parker's prosecution occurred between Chief Deputy City Attorney Charlene Larche-Mason (Ms. Beebe's  supervisor), Orleans Parish Assistant District Attorney Page Cline, and Judge Sens.[2] *See* Ex. 6. Specifically, Ms. Larche-Mason wrote to the Orleans Parish District Attorney's office, copying Judge Sens and his son (the Clerk of Court) about Mr. Parker's case:

> Please find attached our file in the matter of *City of New Orleans v. Tyrone Parker* case number 1208168. The City's Attorney's Office believes this case may warrant state prosecution due to the defendant's [*sic*] physical injuries sustained by the victim Elizabeth Blakely.

*Id.* Mr. Parker was not copied (or otherwise notified) of this mid-trial communication between prosecutors and the judge overseeing his adjourned trial.

### V.    Judge Sens Declares a Mistrial Over Mr. Parker's Objection & Prosecutors Dismiss the Charges

---

[2] The City of New Orleans and the State of Louisiana are the same sovereign for purposes of the Double Jeopardy Clause. *Waller v. Florida*, 397 U.S. 387 (1970).

7

Judge Sens declared a "continuance" in the trial until April 25, 2017 (i.e., enough time to allow prosecutors to transfer Mr. Parker's case to felony court).

Meanwhile—although he had not requested a continuance, mistrial, or appointment of counsel from the court mid-trial—Mr. Parker submitted a successful application for free legal assistance to Orleans Public Defenders. Public defender Emily New enrolled as counsel on his behalf to assist Mr. Parker. *See* Ex. 7; Ex. 8. After talking with Ms. Beebe and reviewing the record, she immediately recognized what was afoot: that prosecutors and Judge Sens were attempting to improperly charge Mr. Parker with a felony despite having already concluded their case-in-chief in the misdemeanor trial. *Id.*

Ms. New's concern was well-founded: on April 24, 2017, just 24 hours before Mr. Parker's trial was set to resume (and conclude), the District Attorney filed a felony "second-degree battery" charge for the same incident in Criminal District Court. *See id.*; *see also* Ex. 9.

On April 25, 2017, Mr. Parker returned to Municipal Court with counsel prepared to conclude the misdemeanor trial; prosecutors obviously wished to avoid this because it would complicate their efforts to pursue the recently filed felony charges. Before the case was called, Judge Sens convened a bench conference with Emily New (Mr. Parker's attorney) and Ms. Beebe to learn whether prosecutors had taken advantage of the "pause" they requested. *See* Ex. 8 (affidavit of Emily New). During this bench conference, Ms. Beebe confirmed to Judge Sens that the City

8

Attorney and District Attorney had done what they said; she informed Judge Sens that the District Attorney had just hours earlier charged Mr. Parker with a felony. *See* Trial Tr. (April 4, 2017) 8:16-8:23.[3]

Judge Sens then declared a mistrial in *City of New Orleans v. Tyrone Parker*. *See* Trial Tr. (April 25, 2017) 46:16-47:20. Prosecutors happily acquiesced, Trial Tr. 47:3-:47:14, but Mr. Parker clearly and unambiguously objected:

> BY THE COURT:    Okay. So I'm going to declare a mistrial in this matter, and then I'm going to get a new date for trial.
>
> BY MS. NEW:    Please note our objection.
>
> BY THE COURT:    And we'll note public defender's objection.
>
> BY MS. BEEBE:    Thank you, Your Honor.

Trial Tr. 47:16-48:5. Mr. Parker did not want a mistrial to be declared because he was ready to proceed with his case at that time, as scheduled, and he did not want to be placed in jeopardy a second time (and certainly not for more serious charges). *See* Ex. 9.

The misdemeanor court's official minute entry initially dated April 25, 2017 reads: "DA accepted felony charges 534-360 'F' Nol Pros" (followed by a signature that appears to be Jane Beebe's). *See* Ex. 10. At an unknown time, it appears that

---

[3] Ms. New was independently aware of the felony bill of information, and was prepared for this possibility, because she had independently checked the Criminal District Court's computer system, which showed that a felony bill of information had been filed against Mr. Parker the day before. *See* Ex. 8.

the date on the minute entry was scratched out a new date of 5/9/17 was handwritten. On information and belief, this minute entry was written by Jane Beebe immediately after she procured this mistrial on April 25, 2017, but subsequently altered when prosecutors realized they did not yet have an arraignment date for Mr. Parker in his felony case. Thus, prosecutors needed to keep Mr. Parker's misdemeanor case "live" for another five weeks (although they knew they would not pursue it) to ensure his return to municipal court where he could receive a subpoena for felony court.

## VI.  Mr. Parker is Subject to Jeopardy Again

On May 24, 2017, Mr. Parker's case was "transferred" to felony court, where he was arraigned in Section "F" of Orleans Parish Criminal District Court for La. R.S. § 14:34.1 second-degree battery.[4] The charging instrument identifies the same act at issue in the municipal court case for which Mr. Parker was already tried: the alleged February 1, 2017 battery upon Elizabeth Blakely. *Id.* The State has never disputed that the alleged wrongdoing identified in the felony charge is anything other than the same wrongdoing at issue in the misdemeanor case, "transferred" over from the municipal court to Orleans Parish Criminal District Court.

---

[4] La. R.S. § 14:34.1 provides as follows: "Second degree battery is a battery when the offender intentionally inflicts serious bodily injury." A "battery," in turn, is defined in Title 14, as follows: "Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La. R.S. 14:33; *see also* Muni. Code § 54-96 (providing identical definition).

Mr. Parker promptly filed a motion to quash the felony bill of information on double jeopardy grounds on July 17, 2017.

Mr. Parker's motion to quash was denied by the trial court on August 1, 2017 without any written opinion or minute entry reflecting the trial court's rationale. Mr. Parker then sought relief via a supervisory writ application to Louisiana's Fourth Circuit Court of Appeals, which on October 10, 2017, denied relief without a word of explanation. Finally, Mr. Parker applied to the Louisiana Supreme Court for supervisory relief; on November 28, 2017, it too denied relief without explanation.

Mr. Parker was exhausted by the prolonged ordeal and had done everything he could within the Louisiana courts to enforce his right to be free from double jeopardy. Unwilling to endure the stress of an unconstitutional second trial—and given an opportunity to preserve his double jeopardy claim—Mr. Parker accepted on April 4, 2018, a felony plea agreement that included a (suspended) five-year sentence at hard labor.

## VII.   The Plea Agreement Preserved Mr. Parker's Right to Seek Post-Conviction Relief on his Double Jeopardy Claim

As part of Mr. Parker's plea agreement, Mr. Parker expressly retained his right to raise the instant Double Jeopardy claim in the context of an application for "post conviction relief." *See* Ex. 11 ("I understand that there is a two year time period from when the judgment of conviction and sentence has become final to seek post conviction relief."). Under Louisiana law, a narrow set of constitutional

11

claims—including double jeopardy claims—are channeled to a "post-conviction relief" process. La. C. Cr. P. art. 930.3(3) (providing "relief shall be granted . . . on the . . . grounds [that] [t]he conviction or sentence subjected him to double jeopardy"). Having secured the ability to continue asserting his Double Jeopardy claim, Mr. Parker agreed to forgo any of the other claims he might otherwise raise in a direct appeal. *Id.*

### VIII.  Mr. Parker Unsuccessfully Attempts to (Re)Raise the Double Jeopardy Issue in State Court

Mr. Parker secured *pro bono* counsel and filed an application for post-conviction relief in state court on August 28, 2018, seeking once again to present to Louisiana courts the constitutional claim advanced here. The post-conviction relief petition alleged that (1) that the institution of the felony prosecution violated his rights under the Double Jeopardy Clause, and (2) that insofar as his initial double jeopardy claim was denied because trial counsel failed to properly present the relevant information to the felony trial court, that he was denied effective assistance of "counsel" under the Sixth Amendment.[6]

The State filed a partial procedural objection. Specifically, the State argued that Mr. Parker's Double Jeopardy claim should not be addressed on the merits because it had *already* been litigated when Mr. Parked filed his July 2017 motion to

---

[6]  To be clear, on the record existing before the felony trial court at that time, the motion to quash clearly should have been granted. But, as explained in an affidavit filed by Mr. Parker's felony attorney, she did not do everything that a reasonable attorney would have done to make the issue crystal clear for the court. *See* Ex. 14.

quash; sought review from Louisiana's Fourth Circuit Court of Appeals; and sought review from the Louisiana Supreme Court. In a written ruling dated November 16, 2018, the trial court agreed that the Double Jeopardy claim was "procedurally barred as it has already been litigated." Without explanation, Louisiana's Fourth Circuit Court of Appeals concurred on December 10, 2018, as did the Louisiana Supreme Court on May 20, 2019.

Only then did the trial court turn to the remainder of Mr. Parker's post-conviction relief petition and address Mr. Parker's ineffective assistance of counsel claim on the merits. Without explanation, the trial court denied that claim, as well. Mr. Parker sought review of that decision to Louisiana's Fourth Circuit Court of Appeals and Louisiana Supreme Court. On June 22, 2020, the Louisiana Supreme Court denied relief.

## SECTION TWO: DOUBLE JEOPARDY CLAIM

### I.    Double Jeopardy, Law

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. The double jeopardy prohibition of the Fifth Amendment, "a fundamental ideal in our constitutional heritage," is enforceable against the States through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794-95 (1969). The "double jeopardy" prohibition was "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying

13

idea, once that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88 (1957).

The constitutional guarantees against double jeopardy prohibit re-prosecution after a *mistrial* and also re-prosecution after an *acquittal* (both of which are at issue here) for the same offense. These three legal issues—(1) re-prosecution after a mistrial; (2) re-prosecution after an acquittal; and (3) the meaning of "same offense" for double jeopardy purposes—are addressed in turn.

### A.    Re-Prosecution Following Mistrial

The prohibition against "double jeopardy" generally bars the re-prosecution of a criminal defendant even when, after jeopardy first attaches, the initial trial is not completed. As the U.S. Supreme Court has explained:

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Arizona v. Washington*, 434 U.S. 497, 503-05 (1978). The basic idea for fixing the attachment of jeopardy to the *beginning* of trial, as opposed to the end, is that a defendant has a "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684 (1949), to have his trial completed "once and for all" and "conclude his confrontation with society," *United States v. Jorn*, 400 U.S. 470, 486 (1971) (plurality opinion).

The U.S. Supreme Court has also emphasized that the government should not get a second bite at the apple following a mistrial declared over the defendant's objection because of the possibility that the government may attempt to strengthen its case after an initial mistrial as it gathers more evidence and learns from its mistakes. *Arizona v. Washington*, 434 U.S. 497, 503-505 (1978); *Crist v. Bretz*, 437 U.S. 28, 35-36 (1978). "Even if the mistrial was compelled by necessity so great as to be almost absolute, where the condition that prevented the trial from continuing was purposely created by the prosecution in order to compel a mistrial, the rationale of [*Oregon v.*] *Kennedy* suggests that double jeopardy would bar a retrial. Wayne R. LaFave, et al., 4 CRIMINAL PROCEDURE § 25.2(c) ("The 'Manifest Necessity' Standard) (discussing *Oregon v. Kennedy*, 456 U.S. 667 (1982)).

An exception to the general rule (governing mistrials declared over the defendant's objection) exists only where an initial mistrial is the result of "manifest necessity," a doctrine that the U.S. Supreme Court has held may allow for retrial under extraordinarily limited and carefully delineated circumstances. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). The chief "manifest necessity" scenario

15

occurs when a mistrial stems from the jury's inability to reach a verdict, *Logan v. Perez*, 144 U.S. 263 (1892), or when circumstances unquestionably prevent the continuation of the trial. *See, e.g., Simmons v. United States*, 142 U.S. 148 (1891) (juror's impartiality became questionable during trial); *Wade v. Hunter*, 336 U.S. 684 (1949) (court-martial discharged mid-trial because enemy advancing on site).

But the Court has been loathe to recognize "manifest necessity" in the case of most mistrials. For example, the U.S. Supreme Court has held that where a mistrial was the result of a witness being unavailable because a party inadvertently failed to serve the witness, retrial is barred, because the party should have known prior to the selection and swearing of the jury that the witness was unavailable. *Downum v. United States*, 372 U.S. 734 (1963). The U.S. Supreme Court has also refused to allow re-prosecution when a mistrial occurs because a trial judge— although *genuinely* trying to benefit the defendant—erroneously declares a mistrial: the Court explained that the "doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option [to continue with the first trial] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn*, 400 U.S. 470, 483 (1971) (plurality opinion).[7]

The "manifest necessity' doctrine does not apply when a criminal defendant fails to lodge an affirmative objection to the mistrial, and hence expressly or

---

[7]    This case does not involve a mistrial declared at the request of the defendant, which is evaluated under a different set of standards. *See, e.g., United States v. Scott*, 437 U.S. 82, 93 (1978).

implicitly consents to the mistrial. *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997).

### B.    Re-Prosecution Following Acquittal

Separate and apart from the issue of re-prosecution following a mistrial, the basic rule that a defendant may not be retried following an acquittal is "the most fundamental rule in the history of double jeopardy jurisprudence." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977). "The law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty.'" *United States v. Scott*, 437 U.S. 82, 91 (1978) (quoting *Green v. United States*, 355 U.S. 184, 188 (1957)).

Louisiana law provides that certain actions by prosecutors *are* acquittals, by operation of law, and therefore serve as an absolute bar to re-prosecution. *See* La. C. Cr. P. art. 693(1). Specifically, when a prosecutor enters into a *nolle prosequi* of a given charge, such action is (generally) "*not* a bar to a subsequent prosecution" if no trial witnesses have yet been sworn. La. C. Cr. P. art. 693 (emphasis added). However, when a prosecutor does so at any time "after the first witness is sworn at

17

the trial on the merits," this action "operate[s] as an acquittal and bar[s] a subsequent prosecution for the charge dismissed." La. C. Cr. P. art. 693(1).[8]

### C.    The "Same Offense"

The prohibition against double jeopardy applies only to successive prosecutions "for the same offense." *See* U.S. Const. amend. V. Often, a single act may subject a defendant to punishment under different criminal statutes. The basic rule "is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied is whether each [statutory] provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). For example, a defendant may not be punished for rape and for killing the same victim in the perpetration of the rape, because it is not the case that each statute required proof of a fact that the other did not. *Whalen v. United States*, 445 U.S. 684 (1980).

### III.    Double Jeopardy, Application of Law to Facts

The prosecution(s) of Mr. Parker represent a clear-cut violation of the Double Jeopardy Clause's prohibition against successive prosecutions. Jeopardy attached

---

8    This rule has been well-established under Louisiana law since the establishment of the Louisiana Code of Criminal Procedure in 1928. *See generally* Dale E. Bennett, *Revision of Louisiana's Code of Criminal Procedure—A Survey of Some of the Problems*, 18 La. L. Rev. 383 (1958). Before the Civil War, the prevailing view was that a prosecutor's dismissal of charges following an appellate court's reversal of a conviction did not operate as an acquittal for purposes of (the Louisiana Constitution's) Double Jeopardy Clause. *See State v. Hornsby*, 8 Rob. (LA) 583 (1845)). Article 693(1) of the Code of Criminal Procedure expressly abrogated *Hornsby*. *See* Official Revision Comment, La. C. Cr. P. art. 693(1) (citing *State v. Fradella*, 164 La. 752 (1927) and noting that the new Rule established an exception to *Hornsby* by barring reinstitution after jeopardy had initially attached).

on April 4, 2017 when the first witness in his trial was sworn, and there was no "manifest necessity" for the mistrial—declared over Mr. Parker's unambiguous objection—on April 25, 2017. *See Downum v. United States*, 372 U.S. 734 (1963). Even if there *was* a "manifest necessity" for the mistrial, prosecutors acquitted Mr. Parker of the misdemeanor battery offense by virtue of their decision to enter into a *nolle prosequi* of that charge after the swearing of the first witness. *See* La. C. Cr. P. art. 693(1). Hence, reprosecuting him for the "same offense"—here, "battery" and "second-degree battery" are indisputably the same offense under *Blockburger v. United States*, 284 U.S. 299, 304 (1932)—was unconstitutional. The decisions of the state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), or both.

Under Louisiana law, "second-degree battery" (as defined by La. R.S. 14:34.1) requires proof that the defendant committed a "battery" (as defined, identically, by La. R.S. 14:33 and Muni. Code § 54-96). As defined by statute, "second-degree battery" is nothing more than "a battery when the offender intentionally inflicts serious bodily injury" (*i.e.*, an ordinary "battery" plus proof of a specific "state of mind [that] . . . the offender actively desired the prescribed criminal consequences to follow his act or failure to act," La. R.S. 14:10(1) (defining specific intent)). Thus, although "second-degree battery" includes elements that are not included within the

19

definition of "battery," every element of a "battery" is included within the definition of a "second-degree battery." Put slightly differently, it is impossible to commit a "second-degree battery" without first committing a "battery." "Battery" is also statutorily defined as a "lesser included" offense of "second-degree battery" under Louisiana law. *See* La. C. Cr. P. art. 814.

In opposing Mr. Parker's motion to quash based on double jeopardy grounds, the State advanced the argument that "battery" was *not* included within "second-degree battery" because the former was a general intent crime whereas the latter was a specific intent crime. But "general criminal intent is present whenever there is specific intent." La. R.S. 14:10(2). There is no such thing as a "general intent" element that is present for simple battery but lacking for "second-degree battery." Nor has any Louisiana court ever suggested as much.

**SECTION THREE: INEFFECTIVE ASSISTANCE OF COUNSEL**

Although Mr. Parker's appointed counsel in his felony case (Karen Orzechowski) raised a version of the aforementioned double jeopardy argument, critical information was omitted from her filing that may have hindered the state courts from properly understanding the legal issue presented. A defense attorney's failure to properly pursue a potentially dispositive pre-trial motion is a form of "ineffective assistance of counsel" that can be properly urged in the context of a petition for post-conviction relief. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365 (1986). Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668 (1984), adopted by the Louisiana Supreme Court in

*State v. Washington*, 491 So.2d 1337, 1339 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect.

Specifically, the double jeopardy issue presented to this court previously contained a number of crucial omissions on both *factual* and *legal* issues; these inexplicable and unjustified omissions were objectively unreasonable and prevented Mr. Parker's claim from succeeding. As set forth in Mr. Parker's previous attorney's affidavit:

> I filed a Motion to Quash ("MTQ") on Mr. Parker's behalf in July 2017. I filed the motion to quash without having reviewed the full municipal court trial transcript or received full discovery. The MTQ did not include certain information about the circumstances leading to the declaration of the April 4, 2017 continuance and April 25, 2017 mistrial in Municipal Court.
>
> The MTQ did not mention, or include transcripts showing, that the Assistant City Attorney immediately asked for a "pause" to Mr. Parker's trial when she realized the City may have made a mistake beginning trial on the charge of "battery." The MTQ omitted any discussion of the *ex parte* bench conference between that prosecutor and Judge Sens that occurred immediately afterward. I did not talk to Mr. Parker about what happened during his Municipal Court trial. I did not update or re-urge my Motion to Quash (or seek to supplement the record before the Fourth Circuit and the Louisiana Supreme Court) after the full transcript was completed on September 12, 2017.
>
> I also omitted from the MTQ and writ applications that there was another *ex parte* conversation involving the City Attorney, District Attorney, and Judge Sens—an April 4, 2017 letter that was copied to Judge Sens discussing the complaining witness's injuries and the possibility of bringing a felony charge before the April 25, 2017 resumption of trial. This letter was in my possession on August 22, 2017. I did not update or re-urge my Motion to Quash (or seek to

supplement the record before the Fourth Circuit and the Louisiana Supreme Court) after receiving this letter.

The MTQ also omitted evidence, in the form of a handwritten note on the complaining witness's subpoena (issued April 4, 2017), indicating that the District Attorney was "screening" as of the declaration of the continuance that morning. A review of the Municipal Court file in Mr. Parker's case would likely have revealed this note, as it is now in the Municipal Court file (and there is no reason I know of that it would not have been there in May 2017). I was unaware of the note until July 2018.

The MTQ did not include the portion of the transcript showing that Mr. Parker objected to the April 25, 2017 mistrial. I did not update or re-urge my Motion to Quash (or seek to supplement the record before the Fourth Circuit and the Louisiana Supreme Court) after receiving this portion of the transcript.

The MTQ also omitted any discussion of the bench conference involving my colleague that occurred on April 25, 2017 where Judge Sens learned of the felony charge immediately before declaring the mistrial.

From reading the State's Reply to the MTQ before the trial court, I knew that the question of *why* the mistrial was declared in Municipal Court could be an important issue in the success of Mr. Parker's double jeopardy claim (and that the State was claiming that Mr. Parker did not have a valid because "the trial court declared a mistrial [because] the defendant requested legal representation and requested that he be allowed to subpoena witnesses to testify at trial").

I did not ask Mr. Parker if that was what really happened at the April 4, 2017 or April 25, 2017 trial settings and I did not submit any evidence (including the transcript or an affidavit) showing that this was *not* what happened. I did not update or re-urge my Motion to Quash (or seek to supplement the record before the Fourth Circuit and the Louisiana Supreme Court) after receiving the full transcript showing that this is not what happened.

There was no strategic or tactical reason for omitting the evidence—or failing to seek an evidentiary hearing before the trial court to adduce the evidence—discussed above. There was also no strategic or tactical reason for failing to investigate the issue of what happened before the Municipal Court further.

Ex. 14.

Mr. Parker's case satisfies both prongs of the *Strickland* test. In omitting the critical information presented here, Mr. Parker's counsel performed below an objective standard of reasonableness, and it prejudiced his claim by preventing this court and the reviewing courts from properly understanding the double jeopardy violation at issue.

**SECTION FOUR:**
**MR. PARKER'S CLAIMS MUST BE HEARD ON THE MERITS**

## I.    Mr. Parker is "in Custody"

Mr. Parker is currently on probation under the supervision of the Department of Public Safety & Correction, headquartered in Baton Rouge, La. "[A] petitioner . . . who is under the restrictions of probation . . . is in custody for purpose of habeas review." *White v. Lea*, No. CIV.A. 14-1782, 2015 WL 222360, at *3 (E.D. La. Jan. 14, 2015) (citing *Wottlin v. Fleming,* 136 F.3d 1032, 1034 n. 1 (5th Cir.1998); *Clark v. Prichard,* 812 F.2d 991, 997 (5th Cir. 1987) ("[A] person on probation and subject to the conditions of probation is 'in custody' for purposes of the habeas corpus statute."); *Spring v. Caldwell,* 692 F.2d 994, 996 (5th Cir. 1982).

## II.    This is Mr. Parker's First Application for a Writ of Habeas Corpus

No previous application for a writ of habeas corpus has ever been filed on Mr. Parker's behalf. Therefore this Court is not restricted by the rules governing review of second or subsequent habeas corpus applications and should review his claims on the merits. "Dismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ

entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324 (1996).

### III.    The Claims in this Application have been Exhausted and are not Procedurally Defaulted

"[I]t is settled that § 2254 is satisfied if the federal issue has once been properly presented to the highest court of the state." *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995) (citing 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4264).

The instant Double Jeopardy claim has been presented to the Louisiana Supreme Court and all levels of inferior courts, twice; the Ineffective Assistance of Counsel claim has been presented to all levels of Louisiana's courts once. The first presentation of the Double Jeopardy Claim occurred when Mr. Parker filed a motion to quash his felony case on double jeopardy grounds and sought supervisory writs from the denial of relief to the Fourth Circuit Court of Appeal and the Louisiana Supreme Court. In an abundance of caution, he presented his claims to Louisiana courts once against in the context of a petition for post-conviction relief petition. Invoking La. C. Cr. P. art. 930.4, which bars relitigation of claims that have already been "fully litigated," the post-conviction trial court declared the matter "previously litigated." Both the intermediate court and the Louisiana Supreme Court agreed.

As the U.S. Supreme Court and the U.S. Fifth Circuit have explained, when a state post-conviction claim is summarily denied because it was "previously

litigated," this ruling signifies that the matter has been exhausted (and is not

procedurally defaulted) for purposes of federal habeas review:

> When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review. In *Ylst v. Nunnemaker,* 501 U.S. 797, 804, n. 3 (1991), we observed in passing that when a state court declines to revisit a claim it has already adjudicated, the effect of the later decision upon the availability of federal habeas is "nil" because "a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default." [Citing, *inter alia, Bennett v. Whitley*, 41 F.3d 1581, 1582 (5th Cir. 1994)]. When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication. See 28 U.S.C. § 2254(b)(1)(A) (permitting issuance of a writ of habeas corpus only after "the applicant has exhausted the remedies available in the courts of the State"). A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration—not when the claim has been presented more than once.

*Cone v. Bell*, 556 U.S. 449, 466–67 (2009); *accord Bennett v. Whitley*, 41 F.3d 1581,

1582 (5th Cir. 1994) (discussing La. C. Cr. P. art. 930.4 in particular).

The ineffective assistance of counsel claim, meanwhile, was presented to the

state courts in a post-conviction relief petition; Louisiana courts at each level

rejected the claim (with the Louisiana Supreme Court finally taking action on June

22, 2020).

## IV.    The Claim in this Application is Timely Filed

The petition is timely filed. *See* 28 U.S.C. § 2244(d)(2). Mr. Parker was

convicted by operation of his guilty plea on April 4, 2018. He filed his state post-

25

conviction relief petition on August 28, 2018. The post-conviction relief petition remained pending at all times, and Louisiana courts did not finish adjudicating Mr. Parker's petition until June 22, 2020. During the pendency of Mr. Parker's state-court post-conviction relief efforts, the one-year limitation period for federal habeas was tolled. The instant petition is thus timely filed.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, and any others that may appear to the Court, Mr. Parker prays that the writ of habeas corpus be granted.

Respectfully submitted,

Thomas Frampton
UVA School of Law
580 Massie Road
Charlottesville, VA 22903
t: (202) 352-8341
e: tframpton@law.virginia.edu
*Affiliation for identification only*

26