# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TYRONE PARKER | CIVIL ACTION |
| VERSUS | |
| JAMES M. LEBLANC, ET AL. | NO. 20-00609-BAJ-EWD |

## RULING AND ORDER

In this habeas action, Petitioner Tyrone Parker alleges that his 2018 conviction for second-degree battery was obtained in violation of the Fifth Amendment's prohibition against double jeopardy. (Doc. 1 at pp. 13-20). Alternatively, Petitioner alleges that his conviction was obtained in violation of the Sixth Amendment's guarantee of effective counsel, based on trial counsel's alleged failure to properly present a double jeopardy argument before the Louisiana courts. (*Id.* at pp. 20-23).

Now, Respondents Louisiana Department of Public Safety & Corrections Secretary James LeBlanc and Louisiana Attorney General Jeff Landry (collectively, "the State") move to dismiss Petitioner's habeas petition, objecting that Petitioner's double jeopardy claim is procedurally defaulted (Doc. 9 at pp. 7-18), and that Petitioner's ineffective assistance of counsel claim fails on the merits, (*id.* at pp. 19-27). Petitioner opposes dismissal. (Doc. 10).

For reasons set forth below, the State's procedural objections will be denied, and the State will be required to respond to the merits of Petitioner's double jeopardy claim. The Court will reserve ruling on the merits of Petitioner's ineffective assistance of counsel claim, pending merits review of Petitioner's double jeopardy claim.

I. **BACKGROUND**

On February 1, 2017, the New Orleans Police Department cited Petitioner for "simple battery," in violation of New Orleans Municipal Code § 54-96. (Doc. 1-1 at p. 2). As set forth in the February 1 citation and summons, Petitioner's offense involved an alleged encounter with Complainant Elizabeth Blakely, in the 800 block of St. Andrew Street. (*Id.*).

On February 10, 2017, Petitioner appeared for arraignment in Division A of the New Orleans Municipal Court, and pleaded "not guilty" to the charge of "simple battery." (Doc. 1-2 at p. 1). Defendant was advised of his right to counsel, and released on bond, pending a bench trial on April 4, 2017. (*Id.*).

On April 4, 2017, Petitioner appeared for trial before Municipal Court Judge Paul Sens. Prior to trial, Petitioner requested to represent himself, and waived his right to counsel. (Doc. 1 at p. 4; *see* Doc. 1-3). Thereafter, the Assistant City Attorney made an opening statement, and called the City's first and only witness, Complainant Blakely. (Doc. 1-4 at p. 4). Ms. Blakely was sworn, and positively identified Petitioner. (*Id.* at pp. 4-6). Then, Complainant testified on direct examination that she encountered Petitioner as she was unloading groceries from her car, with her service dog standing—unleashed—nearby. Petitioner was walking his own dog—leashed—and passed near Complainant's dog, prompting Complainant's dog to sniff Petitioner's dog. Perceiving a threat, Petitioner kicked Complainant's dog in the head, confronted Complainant, and then, when Complainant called the police, "hit [her] in the back of the head; knocked [her] into the bushes; and continued to beat on [her]," before fleeing. (*Id.* at pp. 6-8). Petitioner fractured Complainant's orbital bone and

dislocated her jaw, costing Complainant approximately $6,000 in medical bills and lost wages. (*Id.* at pp. 8-9).

Curiously, upon soliciting Complainant's testimony regarding her injuries, the Assistant City Attorney addressed the Court, indicating that Petitioner's "simple battery" charge should be enhanced. Specifically, the City Attorney stated, "Sounds like a second degree, Judge. Is there any way we can pause it," at which point the Court broke for "a brief bench conference." (*Id.* at p. 8). Petitioner states that he was not invited to attend this bench conference, despite acting as his own advocate. (Doc. 1-5 at p. 1).

In any event, after this interlude, the City Attorney finished her direct examination, and tendered Complainant for cross-examination. (Doc. 1-4 at pp. 8-14). Following an argumentative cross-examination of Complainant—largely consisting of Petitioner's *own* account of what occurred between them (*id.* at pp. 14-34)—the City Attorney conducted a brief re-direct examination, excused Complainant, and rested the City's case. (*Id.* at pp. 34-41).

After the City rested, Petitioner addressed the Court, explaining that he had no witnesses to call because he "didn't think [he] … needed them." Plaintiff further stated that, had he known he was on trial for battery, he "would've brought a lawyer":

> **BY THE COURT:** The City rests in this matter, so now it's your case-in-chief. You have an opportunity to get on the stand, be sworn in, and testify. What happened with your witnesses?
>
> **BY MR. PARKER:** They at work. A lot of them are at work, and I didn't think I would – I needed them. If I would've knew that the situation was like this, I would've brought a lawyer. I didn't even -- I didn't know because I'm thinking this is a dog situation. I don't know what all this other stuff coming from, so I didn't bring no witnesses; I didn't think I

3

needed none.

(*Id.* at pp. 41-42).

In the same exchange, however, Petitioner admitted that he ignored repeated warnings that his case would benefit from the assistance of counsel:

> **BY [ASSISTANT CITY ATTORNEY] MS. BEEBE:** Judge, just to clarify for the record -- I spoke with Mr. Parker before even presenting the case to you, highly recommending that he get an attorney.
>
> **BY MR. PARKER:** She did.
>
> **BY MS. BEEBE:** I asked for a reset for him to get an attorney.
>
> **BY MR. PARKER:** She did.
>
> **BY MS. BEEBE:** When we went over the charges, I said, "I would get an attorney, if it were me."
>
> **BY MR. PARKER:** She did.
>
> **BY MS. BEEBE:** I tried to get him to get - an attorney.
>
> **BY MR. PARKER:** She did.
>
> **BY MS. BEEBE:** So he had been given every opportunity --
>
> **BY THE COURT:** I advised him, also.
>
> **BY MS. BEEBE:** --to get an attorney.
>
> **BY MR. PARKER:** She did; she did; she did. And I still didn't think that it was a matter like this because if it was, then I would've took [sic] her advice and I would've -- I didn't know that it was something of this magnitude, you know.
>
> I mean, because, like I said, I just thought it was just a dog-off-the-leash thing. And I admit that I kind of kicked the dog a little bit, but that's it. I didn't think -- You know, I didn't think that I needed no witness and no lawyer.

(*Id.* at pp. 42-44).

Nonetheless, taking Petitioner's statements at face value, the Court ordered a

4

recess to allow Petitioner to obtain counsel *before* concluding trial:

> **BY THE COURT**: All right. This is what we're going to do: I'm going to continue the case for two weeks. I'm going to give you a week to bring in a -- for a Hearing to Determine Counsel. Have an attorney present with you. Do you understand?
>
> **BY THE DEFENDANT:** (Nods head affirmatively.)
>
> **BY THE COURT:** And then we'll reset it in two weeks to conclude the trial.

(*Id.* at pp. 44-45).

Consistent with the Court's order pausing trial, on April 20, 2017 Petitioner obtained representation from the Orleans Public Defenders Office. (Doc. 1-7). Thereafter, however, things took a turn. Rather than continuing the proceedings in Municipal Court, the City Attorney referred Petitioner's case to the Orleans Parish District Attorney's office for potential "state prosecution due to the … physical injuries sustained by the victim." (Doc. 1-6). The District Attorney accepted the referral, and on April 24, 2017 charged Petitioner by bill of information in the Orleans Parish Criminal District Court with one count of second degree battery, in violation of La. R.S. § 14:34.1, and one count of cruelty to animals, in violation of La. R.S. § 14:102.1. (Doc. 1-9; Doc. 9-1 at p. 1).

On April 25, 2017, when Petitioner returned to Municipal Court (with counsel) to resume his trial, Judge Sens immediately declared a mistrial—ostensibly "to allow [Petitioner] to obtain counsel and subpoena witnesses," (Doc. 1-3)—stating that a new trial date would follow. (Doc. 1-4 at pp. 46-48). Petitioner, through counsel, objected to the mistrial. (Doc. 1-4 at pp. 47-48).

Despite Judge Sens having indicated that Petitioner's new trial would also

5

occur in Municipal Court, on May 9, 2017, the City Attorney entered an order of *nolle prosequi* terminating the City's prosecution of Petitioner, noting that "DA accepted felony charges." (Doc. 1-10).

On May 24, 2017, Petitioner appeared with counsel in Criminal District Court, and pleaded not guilty to the second degree battery and animal cruelty charges set forth in the District Attorney's newly minted Bill of Information. (Doc. 9-1 at p. 1).

On July 17, 2017, Petitioner filed a Motion to Quash Based On Double Jeopardy, unambiguously arguing that his "present prosecution [in Criminal District Court] … for the charge of second degree battery violates [his] right to not be put in jeopardy twice for the same offense … [under] the Fifth Amendment to the United States Constitution," due to the City Attorney having previously commenced, concluded, and abandoned Petitioner's Municipal Court prosecution for "simple battery." (Doc. 9-2 at pp. 245-253). On August 1, 2017, the Criminal District Court denied Petitioner's Motion to Quash without written reasons. (Doc. 9-2 at p. 254; Doc. 9-3 at p. 33).

Petitioner attempted to immediately raise his federal double jeopardy claim to the Louisiana Fourth Circuit Court of Appeal *and* the Louisiana Supreme Court, seeking pre-trial writs to review the Criminal District Court's denial of his Motion to Quash. (Doc. 9-3 at pp. 2-21; Doc. 9-2 at pp. 191-209). Each Court summarily denied Petitioner's writ requests. (Doc. 9-2 at p. 210; Doc. 9-2 at p. 216).

After his writs were denied, Petitioner returned to Criminal District Court and, on April 4, 2018, pleaded guilty "as charged" to second degree battery and cruelty

6

to animals. (Doc. 9-1 at pp. 3-4). Petitioner "waived all delays and requested immediate sentencing," and was sentenced to a total of five years imprisonment (suspended), followed by three years of probation. (Doc. 9-1 at pp. 56-57).

Petitioner did not pursue a direct appeal. Instead, on August 28, 2018, Petitioner filed an application for post-conviction relief (PCR), re-asserting his double jeopardy challenge to the Criminal District Court proceedings, and adding a claim of ineffective assistance of counsel, based on trial counsel's alleged failure to properly present his double jeopardy defense. (Doc. 9-2 at pp. 41-57). On September 21, 2018, the State responded with procedural objections, arguing that Petitioner's double jeopardy claim was barred by Louisiana Code of Criminal Procedure art. 930.4(A) because it was "already … litigated once before all the way to the Louisiana Supreme Court." (Doc. 9-3 at p. 190).

On November 16, 2018, the Criminal District Court issued its order dismissing Petitioner's double jeopardy claim, agreeing with the State that this claim was procedurally barred under art. 930.4(A). (Doc. 9-2 at pp. 31-32). In relevant part, the Court's Written Reasons state:

> Regarding the double jeopardy claim, this matter was already addressed in a Motion to Quash based on double jeopardy through defense counsel before the case was resolved with a plea of guilty. In this matter, the Petitioner's double jeopardy claim had already been brought before the Fourth Circuit, [sic] Court of Appeal and the Louisiana Supreme Court.
>
> …
>
> The Supreme Court denied the writ regarding the Motion to Quash in case number 2017-KK-1888. Therefore, this Court found this claim to be procedurally barred as it has already been litigated.

(*Id.*).

7

Again, Petitioner sought immediate review of the Criminal District Court's dismissal of his double jeopardy challenge. (Doc. 9-3 at pp. 51-66; *see also* Doc. 9-2 at pp. 15-28). As before, the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court each summarily denied Petitioner's writ applications. (Doc. 9-2 at p. 29; Doc. 9-2 at p. 2).

Finally, after unsuccessfully pursuing his double jeopardy claim (again) to the Louisiana Supreme Court, Petitioner returned to Criminal District Court to litigate his sole remaining claim of ineffective assistance of counsel. On July 26, 2019 the State submitted its opposition, arguing that this claim failed on the merits. (Doc. 9-1 at pp. 103-110). On September 11, 2019, the Criminal District Court denied this claim, without written reasons. (*See* Doc. 9-1 at p. 7). And, again, the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court followed suit, summarily denying Petitioner's requests for review on October 17, 2019, and June 22, 2020, respectively. (Doc. 9-4 at p. 1; Doc. 9-1 at p. 84).

After failing to obtain relief in state court, Petitioner filed his original Petition For Writ Of Habeas Corpus under 28 U.S.C. § 2254 in this Court. (Doc. 1). The Petition asserts the same two claims set forth in Petitioner's state-court PCR: double jeopardy and ineffective assistance of counsel. (*Id.* at pp. 13-26). Now the State moves to dismiss, arguing that Petitioner's double jeopardy claim is not exhausted *and* procedurally defaulted, and that Petitioner's ineffective assistance claim fails on the merits. (Doc. 9 at pp. 9-27). Petitioner opposes dismissal. (Doc. 10).

For reasons set forth below, the State's procedural objections to Petitioner's

8

double jeopardy claim are baseless. The Court will defer merits-review of Petitioner's ineffective assistance of counsel claim, pending additional briefing from the State.

## II. LAW AND ANALYSIS

### A. Standard

As amended by the Antiterrorism and Effective Death Penalty Act, "28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The following limitations control the Court's review of the State's procedural objections.

First, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Put simply, "[e]xhaustion requires a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (quotation marks omitted).

Second, when a state court decision denying relief rests on a state law ground that is independent of the federal questions raised by the petitioner, and is adequate to support the judgment, a federal court lacks jurisdiction to review the merits of the petitioner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "The independent and adequate state ground doctrine 'applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement.'" *Moore v. Roberts*, 83 F.3d 699,

9

701–02 (5th Cir. 1996) (quoting *Coleman*, 501 U.S. at 729–30).

### B. Discussion

#### 1. Exhaustion

"Exhaustion" requires "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks and citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court … thereby alerting that court to the federal nature of the claim." *Id.* This is not a difficult bar, and may be accomplished with minimal sophistication—"simply labeling the claim 'federal'" will generally do the trick, provided that the petitioner pursues the claim to the state's highest court. *Id.* at 32.

Here, Petitioner squarely presented his federal double jeopardy claim *twice* to the Louisiana Supreme Court: first, in his November 8, 2017 application for a supervisory writ to review the Criminal District Court's denial of his Motion to Quash, (Doc. 9-2 at pp. 191-209); and again in his December 19, 2018 application for a supervisory writ to review the Criminal District Court's ruling that his double jeopardy claim was barred from post-conviction review, (*id.* at pp. 15-28). Whatever may be said of the Louisiana Supreme Court's perfunctory denials of Petitioner's writ applications, (Doc. 9-2 at pp. 2, 216), Petitioner most certainly gave "the State the opportunity to pass upon and correct" the alleged constitutional violation. *See Baldwin*, 541 U.S. at 29. Petitioner's double jeopardy claim is plainly exhausted.

#### 2. Procedural Default

Even if a habeas claim is exhausted, it may nonetheless be procedurally

10

defaulted. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Coleman*, 501 U.S. at 732. Relevant here, procedural default exists where "a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal." *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) (footnote omitted; citing *Coleman*, 501 U.S. at 735 n. 1). In such instances, "the petitioner is deemed to have forfeited his federal habeas claim." *Id.*

For multiple reasons, Petitioner's double jeopardy claim is *not* defaulted.

First, the U.S. Supreme Court has squarely held that when, as here, "a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell*, 556 U.S. 449, 466 (2009).

> When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication.
>
> A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration—not when the claim has been presented more than once.

*Id.* at 467 (citations omitted).

Second, under the "plain statement" rule, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting

11

*Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Here, the Louisiana Supreme Court did not "clearly and expressly" state that its adjudication of Petitioner's claim rested on Code of Criminal Procedure art. 930.4(A), or, for that matter, *any* state procedural bar. Rather, the Louisiana Supreme Court merely "[d]enied" review, without even referencing that the Criminal District Court dismissed Petitioner's post-conviction double jeopardy claim on procedural grounds. (*See* Doc. 9-2 at p. 2).

Finally, a state procedural ground is not "adequate" to foreclose federal review of a federal claim "unless the procedural rule is strictly or regularly followed." *Hathorn*, 457 U.S. 255, 263 (1982). Here, the Criminal District Court relied on Louisiana Code of Criminal Procedure art. 930.4(A) to rule that Petitioner's double jeopardy claim was barred from post-conviction review, reasoning that this claim "had already been brought before the Fourth Circuit, [sic] Court of Appeal and the Louisiana Supreme Court" when Petitioner sought review of the Criminal District Court's prior order denying his Motion to Quash. (Doc. 9-2 at p. 31-32). But this ruling flies straight into the teeth of Code of Criminal Procedure art. 930.3, which states expressly that post-conviction relief *may* be pursued on the ground that "[t]he conviction or sentence subjected [the petitioner] to double jeopardy." La. C.Cr.P. art. 930.3(3). In light of art. 930.3, it is not surprising that the State fails to identify even *one* case where art. 930.4(A) barred a post-conviction double jeopardy claim that was previously adjudicated to the Louisiana Supreme Court on pre-trial writs, much less a collection of cases to establish that such a rule "is strictly or regularly followed." *See Hathorn*, 457 at 263.

12

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the State's procedural objections to Petitioner's double jeopardy claim be and are hereby **OVERRULED**. The Court will defer ruling on the merits of Plaintiff's ineffective assistance of counsel claim pending review of the merits of Petitioner's double jeopardy claim.

**IT IS FURTHER ORDERED** that the State shall file its response to the merits of Petitioner's double jeopardy claim within 21 days of the date of this Order. The State's failure to file a timely response will result in Petitioner's double jeopardy claim being deemed unopposed.

**IT IS FURTHER ORDERED** that Plaintiff's response to the State's merits briefing shall be due within 21 days of service of the State's merits briefing.

**No additional briefing will be allowed. There will be no extensions of the briefing deadlines set forth herein, absent a showing of good cause.**

Baton Rouge, Louisiana, this 2nd day of March, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**